# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| VICE DIGITAL PUBLISHING LLC ) | |
| ) | |
| ) | |
| Plaintiff, ) | **Case No.** |
| ) | |
| against ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| VICE DISTRIBUTION ACQUISITION LLC ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Vice Digital Publishing LLC ("Vice"), by counsel, for its Complaint against Vice Distribution Acquisition LLC ("VD"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.    This is an action for infringement of Vice's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of common law trademark infringement and unfair competition under common laws of the State of Tennessee, as well as intentional interference with business relations and unjust enrichment under the statutory and the common law of the State of Tennessee, all arising from VD's unauthorized attempts to license media content owned by Vice.

2.    Vice seeks injunctive and monetary relief.

1

**JURISDICTION**

3.      This is a civil action arising, in substantial part, under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks).

4.      This Court also has supplemental jurisdiction over the claims in this complaint which arise under the statutes and common laws of Tennessee pursuant to 28 U.S.C. § 1367(a), as the state law claims are so closely related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5.      This Court has personal jurisdiction over VD because Vice's claims alleged herein arise from and relate to VD's contacts with this state. This Court has personal jurisdiction over VD because VD has transacted business within this state and has purposefully directed its conduct toward a Tennessee resident. The claims asserted herein arise directly out of those contacts and the resulting injury suffered by Vice within this state. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, extends personal jurisdiction to the full limits permitted by the Due Process Clause of the United States Constitution, and the exercise of jurisdiction over VD here comports with due process.

**VENUE**

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because VD is subject to personal jurisdiction in this district with respect to this action, and because a substantial part of the events giving rise to this dispute occurred, and continue to occur, in this district.

**PARTIES**

7.      Vice is a limited liability company formed under the laws of Delaware, with its principal place of business in Nashville, Tennessee.

2

8. VD is a limited liability company formed under the laws of Delaware.

## FACTS

9. Vice is comprised of two members with equal interest: (i) Savage Ventures LLC ("Savage Ventures") and (ii) Vice Media Acquisition LLC ("VMA").

10. Vice's board is comprised of four members: Sam Savage ("Savage") and David Webb ("Webb") of Savage Ventures, and Katherine Chandler ("Chandler") and Adam Stotsky ("Stotsky") of VMA.

11. Vice has two officers: Savage, who acts as CEO, and Webb, who acts as CFO.

12. Vice owns a large portfolio of trademark rights, including domestic and international rights to the MUNCHIES brand. *See* Exhibit A, Universal Assignment.

13. In the United States, Vice owns the rights to the following active and registered MUNCHIES marks (the "MUNCHIES Marks") relevant to this dispute:

| Reg. No. | Mark | Class | Goods and Services |
|---|---|---|---|
| 4,706,883 | MUNCHIES | 43 | providing information via a global computer information network in the field of dining, namely, eating, drinking, cooking, food, alcohol, beverages, recipes, restaurants, bars, and the culinary arts; providing a website featuring information in the field of dining, namely, eating, drinking, cooking, food, alcohol, beverages, recipes, restaurants, bars, and the culinary arts; providing a database featuring recipes and information in the field of dining, namely, eating, drinking, cooking, food, alcohol, beverages, recipes, restaurants, bars, and the culinary arts |
| 4,969,285 | MUNCHIES | 38 | television broadcasting; simulcasting broadcast television over global communication networks, the internet and wireless networks; streaming of video programs via the internet |
| 4,645,217 | MUNCHIES | 41 | entertainment services in the nature of ongoing audio-visual programs provided via television, satellite and digital audio and video transmission over wired and wireless networks in the fields of eating, drinking, cooking, food, alcohol, beverages, recipes, restaurants, chefs, bars, food-related travel and the culinary arts |

3

| | | | |
|---|---|---|---|
| 4,645,230 | MUNCHIES (and design) | 41 | entertainment services in the nature of ongoing audio-visual programs provided via television, satellite and digital audio and video transmission over wired and wireless networks in the fields of eating, drinking, cooking, food, alcohol, beverages, recipes, restaurants, chefs, bars, food-related travel and the culinary arts |
| 4,969,291 | MUNCHIES (and design) | 38 | television broadcasting; simulcasting broadcast television over global communication networks, the internet and wireless networks; streaming of video programs via the internet |

14. Vice owns a catalog of digital media content branded under the MUNCHIES Marks in the fields of cooking, dining, restaurants, and related areas.

15. On April 15, 2026, Vice Board Member Chandler sent an email to Vice CFO Webb and others highlighting a potential licensing deal between VMA and Netflix and noting an opportunity to include Vice-owned content in the deal.

16. Discussions about the potential deal and content continued. On May 7, 2026, VMA sent Vice a draft of a Sales Agency Agreement (the "Agency Agreement") under which agency services were to be provided by a previously unknown entity, VD, the Defendant in this case.

17. Vice did not find the draft Agency Agreement's terms satisfactory, and Vice and VMA continued to negotiate terms. No representatives of VD participated in these negotiations.

18. On June 13, 2026, Vice Board Member Chandler sent an email to Webb and others, introducing two employees of "Vice Studios," Paul Randle ("Randle"), UK and Global Head of Business Affairs, and Uri Fleming ("Fleming"), Senior Business Affairs Advisor.

19. While Agency Agreement negotiations continued, on June 16, 2026, Vice told VMA that Vice needed to contract directly with Netflix because Vice owned the underlying

4

MUNCHIES brand but was otherwise willing to continue negotiating the terms of the Agency Agreement.

20. The parties continued to negotiate the terms of the Agency Agreement until June 23, 2026, when Vice learned that VD had already signed an agreement licensing Vice's MUNCHIES content without its consent (the "Fraudulent License Agreement").

21. After learning about the Fraudulent License Agreement, on June 23, 2026, Vice CEO Savage sent an email demanding that Chandler and Stotsky provide: (1) a copy of the fully executed Fraudulent License Agreement with Netflix; (2) a complete inventory of all JV content submitted to Netflix or any other third party under any licensing arrangement, whether formal or informal; and (3) immediate cessation of any further licensing, distribution, or submission of Vice content pending execution of a fully negotiated and mutually executed Agency Agreement.

22. Later that day, Vice Board Member Chandler responded **on behalf of VMA and VD**.

23. In contravention of her fiduciary duty to Vice, Chandler's response advocated on behalf of VD, the party that unlawfully assigned Vice's property.

24. Chandler's response also included a copy of the Fraudulent License Agreement, with the financial terms redacted. *See* <u>Exhibit B</u>, Fraudulent License Agreement.

25. Upon reviewing the Fraudulent License Agreement, Vice discovered that it was executed on behalf of VD one week earlier, on June 16, 2026, by Randle, "Vice Studios" UK and Global Head of Business Affairs.

26. This means that Vice Board Member Chandler and others at VMA continued to advocate on behalf of VD and against Vice ***for seven days*** after they all knew that the Fraudulent License Agreement had been executed with Netflix without Vice's consent.

5

27. On June 29, 2026, Vice Board Member Stotsky left a voicemail for Vice CEO Savage, advocating on behalf of VD's fraudulent licensing of Vice content and repeatedly referring to VD as "we" notwithstanding his fiduciary duties as a board member of Vice.

## COUNT ONE
### (Federal Trademark Infringement)

28. Vice repeats and realleges paragraphs 1 through 27 hereof, as if fully set forth herein.

29. VD's unauthorized and fraudulent licensing of the MUNCHIES Marks as alleged herein constitutes use in commerce that is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of VD's services, and is likely to cause consumers to believe, contrary to fact, that VD's services are sold, authorized, endorsed, or sponsored by Vice, or that VD is in some way affiliated with or sponsored by Vice. VD's conduct, therefore, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

30. VD has committed the foregoing acts of infringement with full knowledge of Vice's rights in the MUNCHIES Marks and with the willful intent to cause confusion and trade on Vice's goodwill.

31. Vice is entitled to, among other relief, injunctive relief and an award of actual damages, VD's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
### (Federal Unfair Competition and False Designation of Origin)

32. Vice repeats and realleges paragraphs 1 through 31 hereof, as if fully set forth herein.

33. VD's unauthorized and fraudulent licensing of the MUNCHIES Marks as alleged herein constitutes use in commerce of a false designation of origin.

34. Upon information and belief, VD's conduct as alleged herein is willful and intended to and is likely to cause or has caused consumers to believe, contrary to fact, that VD's fraudulent attempts at licensing are authorized, endorsed, or sponsored by Vice, or that VD is in some way affiliated with or sponsored by Vice.

35. Upon information and belief, VD's conduct as alleged herein is willful and intended to and is likely to cause or has caused confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of VD's services.

36. VD's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

37. Vice is entitled to, among other relief, injunctive relief and an award of actual damages, VD's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE
**(For Imposition of a Constructive Trust Upon Illegal Profits)**

38. Vice repeats and realleges paragraphs 1 through 37 hereof, as if fully set forth herein.

39. VD's conduct constitutes deceptive and wrongful conduct in the nature of passing off its fraudulent attempts at licensing as services approved or authorized by Vice.

40. By virtue of VD's wrongful conduct, VD has illegally received money and profits that rightfully belong to Vice.

41. Upon information and belief, VD holds the illegally received money and profits in

7

the form of bank accounts, real property, or personal property that can be located and traced.

42.     VD holds the money and profits it has illegally received as constructive trustee for the benefit of Vice.

**COUNT FOUR**
**(Accounting)**

43.     Vice repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44.     Pursuant to 15 U.S.C. § 1117, Vice is entitled to recover any and all profits of VD attributable to its acts of infringement.

45.     Pursuant to 15 U.S.C. § 1117, Vice is entitled to actual damages or statutory damages sustained by virtue of VD's acts of infringement.

46.     The amount of money due from VD to Vice is unknown to Vice and cannot be ascertained without a detailed accounting by VD.

**COUNT FIVE**
**(Trademark Infringement under the Tennessee Trade Mark Act - Tenn. Code Ann. § 47-25-501, et seq.)**

47.     Vice repeat and reallege paragraphs 1 through 46 hereof, as if fully set forth herein.

48.     VD's unauthorized and fraudulent licensing of the MUNCHIES Marks without Vice's consent is likely to confuse and deceive the public into believing that VD is associated with Vice or is sponsored or endorsed by or affiliated with Vice.

49.     VD's activities described herein constitute infringement of Vice's trademark rights in violation of the Tennessee Trade Mark Act, Tenn. Code Ann. § 47-25-512.

50.     Upon information and belief, VD's acts were done knowingly, with actual notice of Vice's trademark rights.

8

51. Upon information and belief, at all relevant times, VD knew, should have known, or had reason to know that the MUNCHIES Marks belong to Vice and could not be licensed without its consent.

52. As a direct and proximate result of VD's willful and deliberate conduct, Vice has suffered, and will continue to suffer, substantial injury, and loss of goodwill.

53. Vice has been irreparably harmed, and if VD is permitted to continue its willful and deliberate acts of infringement, Vice will continue to be irreparably harmed.

**COUNT SIX**
**(Violation of Tennessee Consumer Protection Act – Tenn. Code Ann. § 47-18-101, et seq.)**

54. Vice repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55. The acts and conduct of VD as alleged above constitute unfair and/or deceptive practices pursuant to Tenn. Code Ann. § 47-18-104(b)(2).

56. VD's conduct as alleged above has resulted in damages and losses to Vice and an illicit gain of profit to VD in an amount that is unknown at the present time. Vice's damages, including VD's illicit profits, should be trebled pursuant to Tenn. Code Ann. § 47-18-109(a)(1), (a)(3), (b) because VD's unfair practices can be considered willful for purposes of the statute. In addition, the Court may award such other relief as is necessary and proper.

57. Vice is also entitled to recover its attorneys' fees and costs of suit pursuant to Tenn. Code Ann. § 47-18-109(e).

**COUNT SEVEN**
**(Common Law Trademark Infringement)**

58. Vice repeats and realleges paragraphs 1 through 57 hereof, as if fully set forth herein.

9

59. VD's unauthorized and fraudulent licensing of the MUNCHIES Marks without Vice's consent is likely to confuse and deceive the public into believing that VD is associated with Vice or is sponsored, endorsed by, or affiliated with Vice.

60. VD's activities described above constitute trademark infringement of Vice's trademark rights in violation of the common law.

61. VD's acts were done knowingly, with actual notice of Vice's trademark rights.

62. At all relevant times, VD knew, should have known, or had reason to know that the MUNCHIES Marks refer to Vice and VD was not authorized to license them.

63. As a direct and proximate result of VD's willful and deliberate conduct, Vice has suffered, and will continue to suffer, substantial injury, and loss of goodwill.

64. Vice has been irreparably harmed, and if VD is permitted to continue its willful and deliberate acts of infringement, Vice will continue to be irreparably harmed.

## COUNT EIGHT
### (Intentional Interference with Business Relations)

65. Vice repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

66. Vice had an existing and/or prospective business relationship with Netflix concerning the licensing of Vice's MUNCHIES-branded content, as reflected in the ongoing negotiation of the Agency Agreement and the underlying opportunity to license that content to Netflix.

67. VD had actual knowledge of Vice's business relationship with Netflix, including knowledge that Vice, not VD, owned the MUNCHIES Marks and the underlying content, and knowledge that Vice and VMA were actively negotiating the terms on which that content would be licensed to Netflix.

10

68.     VD intended to cause the breach or termination of Vice's business relationship with Netflix, and to prevent Vice from completing its own contemplated direct licensing relationship with Netflix, by surreptitiously and unilaterally executing the Fraudulent License Agreement covering Vice's MUNCHIES content while the Agency Agreement was still being negotiated in good faith.

69.     VD accomplished this interference through improper means. Specifically, VD engaged in fraud, misrepresentation, and deceit by, through Randle, representing to Netflix that VD possessed the right to license Vice's MUNCHIES-branded content when, in fact, neither VD nor Randle held any such right, and by concealing the existence and execution of the Fraudulent License Agreement from Vice for approximately one week while Vice and VMA continued to negotiate the Agency Agreement in good faith.

70.     VD's interference was further accomplished through independently unlawful and tortious conduct, in that VD's unauthorized licensing of the MUNCHIES Marks and related content constitutes trademark infringement and unfair competition in violation of the Lanham Act, as alleged in Counts One and Two above and incorporated herein by reference.

71.     VD further employed improper means by misusing Vice's confidential business information, in that VD obtained knowledge of the scope, value, and terms of Vice's MUNCHIES content library and of Vice's negotiating position through its access to the draft Agency Agreement and related communications, and used that information to divert the Netflix opportunity to itself.

72.     VD's improper means also included the exploitation of a breach of fiduciary duty, in that VD's scheme was carried out with the knowing participation of, and was concealed by, Vice board members Chandler and Stotsky, each of whom owed fiduciary duties to Vice and

11

each of whom breached those duties by facilitating VD's access to and dealings with Netflix, concealing the Fraudulent License Agreement from Vice, and thereafter advocating on behalf of VD and against Vice's interests notwithstanding those duties.

73. As a direct and proximate result of VD's intentional and improper interference, Vice has suffered, and will continue to suffer, damages, including lost licensing revenue and business opportunity with Netflix, loss of control over the licensing and marketing of its own MUNCHIES-branded content, and damage to its goodwill and business reputation.

## COUNT NINE
### (Unjust Enrichment)

74. Vice repeats and realleges paragraphs 1 through 73 hereof, as if fully set forth herein.

75. By virtue of VD's unauthorized execution of the Fraudulent License Agreement and its licensing of the MUNCHIES Marks and Vice's MUNCHIES-branded content to Netflix without Vice's knowledge or consent, VD received and continues to receive a financial benefit conferred by Vice, including licensing fees, revenue, and other consideration paid or payable by Netflix, as well as the value of Vice's trademarks, goodwill, and content.

76. VD appreciated and had knowledge of this benefit, in that VD knew, at the time it executed the Fraudulent License Agreement, that it did not own and had no right to license the MUNCHIES Marks or Vice's underlying content, and that any consideration it received or would receive from Netflix was attributable to Vice's trademarks, goodwill, and content rather than any asset or right belonging to VD.

77. VD willfully and deliberately accepted and retained this benefit under circumstances that render it inequitable for VD to retain the benefit without payment to Vice of its value, given that VD obtained the benefit solely through its fraudulent and unauthorized use

12

of Vice's trademark rights and content, as alleged above.

78.     As a direct and proximate result of VD's unjust enrichment, Vice is entitled to disgorgement and restitution of all profits, revenue, and other financial benefits obtained by VD under or in connection with the Fraudulent License Agreement, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Vice requests judgment against VD as follows:

1.     Enter a judgment declaring that:

   a.     Vice's federal trademark rights in the MUNCHIES Marks have been and continue to be infringed by VD's unauthorized and fraudulent licensing in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114);

   b.     VD's unauthorized and fraudulent licensing of the MUNCHIES Marks constitutes federal unfair competition in violation of Vice's rights under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

   c.     VD's unauthorized and fraudulent licensing of the MUNCHIES Marks constitutes trademark infringement under the Tennessee Trade Mark Act, Tenn. Code Ann. § 47-25-512;

   d.     VD's unauthorized and fraudulent licensing of the MUNCHIES Marks constitutes unfair and/or deceptive practices pursuant to Tenn. Code Ann. § 47-18-104(b)(2).

   e.     VD's unauthorized and fraudulent licensing of the MUNCHIES Marks constitutes trademark infringement under Tennessee common law.

13

2.      Granting an injunction temporarily, preliminarily, and permanently enjoining VD, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities who receive actual notice of the Court's order by personal service or otherwise from:

a.      licensing or assigning the MUNCHIES Marks;

b.      engaging in any activity that infringes Vice's rights in the MUNCHIES Marks or related content;

c.      engaging in any activity constituting unfair competition with Vice;

d.      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) VD is in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Vice or (ii) Vice is in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with VD;

e.      using or authorizing any third party to use in connection with any business any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices or trade dress that falsely associate such business, or services with Vice or tend to do so;

f.      registering or applying to register any trademark, service mark, domain name, trade name or other source identifier or symbol of origin consisting of or incorporating MUNCHIES, or any other mark that infringes or is likely to be confused with the MUNCHIES Marks, or any services of Vice, or Vice as their source;

14

g. creating, maintaining, operating, or otherwise using any social media profile names, handles, page titles, usernames, bios, or other identifiers using any trademark, trade name, or designation that is identical or confusingly similar to any of the MUNCHIES Marks; and

h. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

3. Directing VD to immediately transfer to Vice's control any social media accounts, profiles, or pages which feature any names, handles, page titles, usernames, bios, or other identifiers using any trademark, trade name, or designation that is identical or confusingly similar to any of the MUNCHIES Marks.

4. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by VD are in any way approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Vice or constitute or are connected with Vice's services.

5. Directing VD to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogues, containers, advertisements, signs, displays and other materials that feature or bear any designation or mark incorporating any of the MUNCHIES Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of any of the MUNCHIES Marks, and to direct all distributors, retailers, wholesalers and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell or

offer for sale VD's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale and/or offering for sale of any and all goods, services, packaging, labels, catalogues, shopping bags, containers, advertisements, signs, displays and other materials featuring or bearing any of the MUNCHIES Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of any of the MUNCHIES Marks, and to immediately remove them from public access and view.

6.     Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), VD to file with the court and serve upon Vice's counsel within thirty (30) days after service on VD of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which VD has complied therewith.

7.     Awarding Vice an amount up to three times the amount of its actual damages under Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

8.     Directing that VD account to and pay over to Vice all profits realized by its wrongful acts under Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) enhanced as appropriate to compensate Vice for the damages caused thereby.

9.     Awarding Vice punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

10.    Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Vice its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

11.    Awarding Vice an amount up to three times the amount of its actual damages, in accordance with the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(a)(3).

16

12. Awarding Vice its costs and reasonable attorneys' fees in accordance with the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109(e).

13. Directing VD to render a full and complete accounting of all monies, revenues, and profits it has obtained, directly or indirectly, from its unauthorized use or licensing of the MUNCHIES Marks and related content, including all sums received or receivable under the Fraudulent License Agreement, and directing VD to pay over to Vice all such monies, revenues, and profits.

14. Awarding Vice compensatory damages for VD's intentional interference with Vice's business relations, in an amount to be determined at trial.

15. Awarding Vice punitive damages for VD's intentional, fraudulent, and malicious interference with Vice's business relations, in an amount sufficient to punish and deter such conduct.

16. Awarding Vice disgorgement and restitution of all profits, revenue, and other financial benefits VD has obtained as a result of its unjust enrichment, in an amount to be determined at trial.

17. Awarding Vice interest, including prejudgment and post-judgment interest, on the foregoing sums.

18. Awarding such other and further relief as the Court deems just and proper.


Dated: July 2, 2026                                         Respectfully submitted,

                                                            s/ Kevin P. Hartley
                                                            Kevin P. Hartley (BPR #29199)
                                                            Telephone: (615) 469-0451
                                                            Email: kevin@trusttree.com


17

William C. Ferrell (BPR #27220)
Telephone: (615) 746-7467
Email: bill@trusttree.com

Derrick M. Davis (BPR #37122)
Telephone: (865) 867-7500
Email: derrick@trusttree.com

TRUST TREE LEGAL, P.C.
798 Berry Road, #41400
Nashville, TN 37204
*Counsel for Plaintiff, Vice Digital Publishing LLC*